IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  09-cv-00806-WYD-MJW

PATRICK WOOD,

Plaintiff,

v.

KEVIN MILYARD, Assistant/Associate Warden,
REBECCA RODENBECK, Administrative Head,
LT. THOMAS BENEZE, Intelligence Officer,
LT. KEN TOPLISS, Hearing Officer,
OLATHE MURPHY, Case Manager,
RANDY FOSHEE, Associate Warden,
MAJOR LINDA MAIFELD, Administrative Head or Designee,
MAJOR TERRY BARTRUFF, Administrative Manager,
LIEUTENANT ROBERT FAZZINO, Disciplinary Officer or Shift Commander, and
COLORADO DEPARTMENT OF CORRECTIONS,

Defendants.

---

## RECOMMENDATION ON
## MOTION TO DISMISS (Docket No. 16)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This matter is before this court pursuant to an Order of Reference to Magistrate

Judge issued by Chief Judge Wiley Y. Daniel on May 21, 2009.  (Docket No. 7).

The pro se incarcerated plaintiff alleges the following in his Prisoner Complaint,

brought pursuant to 42 U.S.C. § 1983.  (Docket No. 1).[1]  In September 2004, plaintiff's

wife submitted an application to the Colorado Territorial Correctional Facility for

---

[1]Senior Judge Weinshienk dismissed the Custody/Control Manager, Territorial
Correctional Facility, and Sterling Correctional Facility as parties because the plaintiff
did not make any allegations against them in his Prisoner Complaint.  (Docket No. 2).

approval to visit the plaintiff.  Plaintiff's case manager, defendant Olathe Murphy,

received the application on October 12, 2004.  He asked plaintiff to provide official

documentation of the marriage.  On November 16, 2004, plaintiff's wife faxed a

marriage license/certificate form issued by the Jefferson County Clerk & Recorders'

Office that same day.  Murphy turned the document over to defendant Lt. Tom Beneze

on or about November 18, 2004, to investigate the case for fraud.  Plaintiff was served

with a Notice of Charges alleging fraud pertaining to the validity of the marriage

license/certificate form on November 29, 2004.  The hearing officer found the plaintiff

guilty of the charge without complying with plaintiff's request to call the Clerk and

Recorder's Office to verify the validity of the certificate.  Unspecified defendants then

removed plaintiff's privileges and refused him visitation with his wife, allowing only

phone calls.  Plaintiff appealed the disciplinary conviction, and the Colorado Court of

Appeals found on December 14, 2006, that the hearing officer misapplied the law and

remanded the case for new findings applying the proper legal standard.  Plaintiff was

subsequently found not guilty of the charge.  An unspecified defendant was ordered by

the court to reimburse fees and costs and restore plaintiff's privileges in compliance with

its regulations.  Plaintiff, however, has been reimbursed only some of the costs, and his

privileges have not been restored.

Plaintiff further asserts that:

Throughout this process, Plaintiff was wrongly denied visitation with his
wife for approximately 3 years, causing Plaintiff and his wife to incur over
$20,000 in fees and costs and expenses, and were subjected to retaliatory
action, including a threatening phone call to Plaintiff's wife to drop the
case, frivolous charges being imposed against Plaintiff, resulting in his
reclassification and removal to a higher level security facility, and loss of
privileges Plaintiff had worked hard to obtain.  Plaintiff had good progress

> reports, good work history, and was not viewed as a management
> problem before this charge.  Plaintiff only had one citation for running
> water at a prohibited time, in the 20 years since he has been there.  Since
> the date of this charge, he was charged with 4 violations within a 6 month
> period.

(Docket No. 1 at 5).

Plaintiff raises ten specific claims, each against one named defendant, which

allege violations of his "Right to Due Process and Equal Protection, and right to be free

from harassment."

Claim One is against Kevin Milyard, the Assistant Warden.  Plaintiff claims that

Milyard:

> was specifically aware of the case, and failed to intervene to stop the
> charges from going any further.  Defendant spoke with Plaintiff on or about
> 12/20/04, and informed him that if he would submit a Power of Attorney,
> he would get the charges dropped.  Plaintiff complied, and Defendant
> failed to ensure the charges were dropped, and he represented he would.
>
> Defendant further allowed harassment of Plaintiff to occur, and personally
> called Plaintiff's wife and threatened to cause problems with her job, if she
> did not drop the case.
>
> Defendant was then appointed Warden of the facility Plaintiff was moved to, and
> denied his visiting application again with his wife, and issued a letter dated
> 01/20/06, stating the application would be pending to await the outcome of the
> court case.

(Docket No. 1 at 5).

Claim Two is against Rebecca Rodenbeck, the Administrative Head.  Plaintiff

claims that Rodenbeck:

> met with Plaintiff on or about 12/31/04, and told him that if he provided her
> with a copy of the marriage license/certificate filed with the Jefferson
> County Clerk and Recorder's office, she would review the case, and take
> action accordingly.
>
> Plaintiff provided a copy of the recorded and filed marriage license/certificate,

4

which was acknowledged by Defendant, however, Defendant still upheld the
conviction in the internal disciplinary appeal on 01/05/04.

(Docket No. 1 at 6).

Claim Three is against Lt. Tom Beneze, an Intelligence Officer.  According to the

plaintiff, Beneze:

performed the investigation of the case.  Defendant blatantly lied and
stated he called the Jefferson County Clerk and Recorder's Office, and
was told no marriage license/certificate document existed.  Plaintiff's wife
called the Jefferson County Clerk and Recorder's Office, and they
confirmed that no one from DOC had called them, and that if they had,
they would have been informed of the marriage license/certificate
document that was properly registered with them.

Defendant based his conclusions solely on what he thought, without
conducting a thorough and proper investigation, then proceeded to lie, to
support his conclusions, rather than admit he was wrong and report
accordingly.

Defendant also directly intervened in the denial of the visitation
application, by instructing DOC personnel to not approve it, after they
already approved it, on or about 07/12/05.

(Docket No. 1 at 6).

Claim Four is against Lt. Ken Topliss, a Hearing Officer.  Plaintiff asserts that

Topliss:

Conducted the hearing held on 12/06/04.  In spite of Plaintiff's request for
him to call the Jefferson County Clerk and Recorder's Office, he refused,
and instead only called his secretary to see if she had received a fax from
them.

Defendant further convicted Plaintiff of the charge, based upon
inappropriate outside factors, primarily on what he had observed through
his experience outside of his job as a wedding photographer, rather than
basing it on the law.

(Docket No. 1 at 7).

Claim Five is against Olathe Murphy, a Case Manager.  Plaintiff asserts that

5

Murphy:

> accepted the visiting application and instructed Plaintiff to obtain a marriage license/certificate to document his common law marriage.  The law does not require this, and it is through this erroneous instruction, that instigated the charges at issue. When Plaintiff provided this documentation as requested, instead of working with Plaintiff to resolve any unanswered questions, or forwarding it to the Administrative head for approval, Defendant instead referred the case to Lt. Beneze for investigation for fraud and recommended denial of Plaintiff's wife's visitation application.

(Docket No. 1 at 7).

Claim Six is against Associate Warden Randy Foshee.  Plaintiff asserts in that claim that Foshee "received all information provided thus far, and issued a letter to Plaintiff's wife on 05/20/05, specifically finding the documents provided were fraudulent, when they were not, and denying approval of visitation."  (Docket No. 1 at 7).

Claim Seven is against Major Linda Maifield, Administrative Head or Designee, Custody/Control Manager, who according to plaintiff "received all information provided thus far, and issued a letter to Plaintiff's wife on 11/29/04, specifically finding the documents provided were fraudulent, when they were not, and denying approval of visitation."  (Docket No. 1 at 8).

Claim Eight is against Major Terry Bartruff, Administrative Manager, who according to plaintiff "approved the visits on 07/12/05, based on recommendation from Cathy Holtz in DOC's legal office, then unapproved the visits on the same date, after discussing it with Lt. Beneze.  Defendant contradicted the legal office's findings, and based the denial on her own erroneous theory of what should happen, in a memo dated 08/27/05."  (Docket No. 1 at 8).

Claim Nine is against Lt. Robert Fazzino, Disciplinary Officer or Shift

Commander, who allegedly "initiated the investigation on the fraud charge, as listed on the COPD Investigation Form, dated 11/23/04.  As the supervisor, Defendant is responsible for reviewing information submitted by the initiating officer (Lt. Beneze) for validity, accuracy, and thoroughness, before intiating [sic] further action, and failed to do so."  (Docket No. 1 at 8).

Finally, Claim Ten is against the Colorado Department of Corrections ("CDOC"), which according to the plaintiff

> is responsible for ensuring their agents operate under the law, and follow their regulations, and has failed to do so.  Further Defendant has denied, and continues to defy a court order, instructing them to restore Plaintiff's privileges and reimburse his fees and costs, and make him whole, as specified in their own regulations.

(Docket No. 1 at 9).

Plaintiff seeks reimbursement of his fees, costs, expenses, and losses resulting from defendants' actions and that he be restored to the greatest extent practicable to all programs, privileges, and jobs lost during any period where they were suspended or removed as a result of the charges against him.

Now before the court for a report and recommendation is a Motion to Dismiss (Docket No. 16) filed by defendants Kevin Milyard, Rebecca Rodenbeck, Lt. Thomas Beneze, Lt. Ken Topliss, Randy Foshee, Major Linda Maifeld, Major Terry Bartruff, Lt. Robert Fazzino, and the CDOC pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). According to defense counsel, defendant Olathe Murphy is no longer a CDOC employee, and thus service was not waived on his behalf.  (See also Docket No. 11 - personal service not effected - wrong address).

The moving defendants seek dismissal of the Prisoner Complaint on the following

grounds: (1) plaintiff's claims are barred by the applicable statute of limitations, (2) in the

alternative, plaintiff's claims against the CDOC and the defendants in their official

capacities for damages are barred pursuant to the Eleventh Amendment, (3) in the

alternative, plaintiff's claims are barred by collateral estoppel, (4) in the alternative,

plaintiff's claims fail to state a claim upon which relief can be granted, and (5)

defendants are entitled to qualified immunity.  Plaintiff filed a response (Docket No. 21),

and the moving defendants filed a reply (Docket No. 22).  The court has carefully

considered these motion papers as well as applicable Federal Rules of Civil Procedure

and case law.  In addition, the court has taken judicial notice of its file.  The court now

being fully informed makes the following findings, conclusions, and recommendation.

Rule 12(b)(1):

empowers a court to dismiss a Complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1).  As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear.  *See* U.S. CONST. art. III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994).  Statutes conferring jurisdiction on federal courts are to be strictly construed.  *See F & S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).  A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction."  *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Motions to dismiss pursuant to Rule 12(b)(1) may take two forms.  First, if a party attacks the facial sufficiency of the complaint, the court must accept the allegations of the complaint as true.  *See Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995).  Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court may make its own findings of fact.  *See id.* at 1003.  A court's consideration of evidence outside the pleadings will not convert the motion to dismiss to a motion for summary judgment under Rule 56.  *See id.*

Cherry Creek Card & Party Shop, Inc. v. Hallmark Marketing Corp., 176 F. Supp.2d
1091, 1094-95 (D. Colo. 2001).

      For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must
accept all well-pled factual allegations in the complaint as true and resolve all
reasonable inferences in the plaintiff's favor.  Morse v. Regents of the Univ. of Colo.,
154 F.3d 1124, 1126 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th
Cir. 1996).  A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint
fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "A
complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead
'enough facts to state a claim to relief that is plausible on its face.'"  Cutter v.
RailAmerica, Inc., 2008 WL 163016, *2 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic
Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).  "While a
complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual
allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'
requires more than labels and conclusions, and a formulaic recitation of the elements of
a cause of action will not do."  Bell Atlantic Corp., 550 U.S. at 545 (citations omitted).
"Factual allegations must be enough to raise a right to relief above the speculative
level."  Id.  "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to
plausible' in order to survive a motion to dismiss. . . .  Thus, the mere metaphysical
possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded
claims is insufficient; the complaint must give the court reason to believe that *this*
plaintiff has a reasonable likelihood of mustering factual support for *these* claims."
Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting

Bell Atlantic Corp., 127 S. Ct. at 1974).

Since the plaintiff is proceeding without counsel, his pleading has been construed liberally and held to a less stringent standard than formal documents drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . .  At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant."  Id.

An assertion of Eleventh Amendment immunity concerns the subject matter jurisdiction of the court.  Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002).  Here, this court agrees with the defendants the plaintiff's claim against the CDOC (Claim Ten) should be dismissed pursuant to the Eleventh Amendment.  See Griess v. State of Colo., 841 F.2d 1042 (10th Cir. 1988).  The CDOC is deemed to be an arm of the state, and thus all claims against it are barred by the Eleventh Amendment.  Peoples v. Zavares, 2008 WL 139239 (D. Colo. Jan. 11, 2008).  In addition, the CDOC is not a "person" for purposes of § 1983 actions.  See Will v. Michigan Dep't of State Police, 491 U.S. 58, 70-71 (1989).  Furthermore, "the United States Supreme Court has previously held that Congress did not abrogate states' Eleventh Amendment immunity when it enacted 42 U.S.C. § 1983."  Ruiz, 299 F.3d at 1181 (citing Quern v. Jordan, 440 U.S. 332, 345 (1979)).  Plaintiff neither alleges in his Prisoner Complaint nor is there any other indication in the record that the state waived its Eleventh Amendment immunity in

10

this case.  This court thus finds that all claims against the CDOC, including damages,

injunctive, and declaratory relief, should be dismissed pursuant to Fed. R. Civ. P.

12(b)(1) for lack of subject matter jurisdiction.  See Smith v. Plati, 56 F. Supp.2d 1195,

1200-01 (D. Colo. 1999) (The Eleventh Amendment provides absolute immunity

regardless of the nature of the relief sought.), aff'd, 258 F.3d 1167 (10th Cir. 2001), cert.

denied, 537 U.S. 823 (2002).

Defendants also assert that the plaintiff has failed to bring his claims within the

applicable statute of limitations.  The Prisoner Complaint is dated April 7, 2009, and was

filed with the court on April 8, 2009.  (Docket No. 1).  Under the prison "mailbox rule,"

the Prisoner Complaint should be deemed "filed" at the moment of its delivery to prison

authorities for forwarding to the District Court.  See Houston v. Lack, 487 U.S. 266

(1988).

The Supreme Court has instructed that "§ 1983 claims are best characterized as

personal injury actions," and, therefore, the relevant state statute of limitations

applicable to such actions is applied.  Hunt v. Bennett, 17 F.3d 1263, 1265 (10th Cir.

1994) (citing Wilson v. Garcia, 471 U.S. 261, 280 (1985)).  Colorado's general two-year

statute of limitations for personal injury actions, § 13-80-102, C.R.S., thus applies to this

case.  Workman v. Jordan, 32 F.3d 475, 482 (10th Cir. 1994); Merrigan v. Affiliated

Bankshares of Colo., Inc., 775 F. Supp. 1408, 1411-12 (D. Colo. 1991).

Federal law, rather than state law, however, determines when a federal claim

accrues.  The statute of limitations begins to run when the plaintiff knows or has reason

to know of the existence of the injury which is the basis of his action.  Kripp v. Luton,

466 F.3d 1171, 1175 (10th Cir. 2006); Industrial Constructors Corp. v. U.S. Bureau of

11

Reclamation, 15 F.3d 963, 969 (10th Cir. 1994).  "A plaintiff has reason to know of his

injury when he should have discovered it through the exercise of reasonable diligence."

Industrial Constructors Corp., 15 F.3d at 969.  In the instant case, a review of the

Prisoner Complaint shows that all of the discrete actions allegedly taken by the named

defendants were done more than two years before this action was commenced.

In his Response, plaintiff contends that his Complaint is not barred by the

applicable statute of limitations.  He appears to be asserting that his claims have not

accrued and/or that the statute of limitations period has been tolled.  More specifically,

plaintiff asserts that he has suffered an ongoing injury inflicted by the defendants which

continues to the present.  According to plaintiff, in cases of an ongoing injury, the statute

of limitations does not begin to accrue until the final act of the injury and that as long as

the defendants continue to subject him to the ongoing deprivation of his federally-

protected rights, the statute of limitations will not begin to run, and accordingly, cannot

run.  In addition, plaintiff asserts he "properly, diligently, and continuously pursued an

action through the state courts during this time, which is required before an action can

be filed in this Court.  Until his proceedings were made final through the state court

process, the extent of the damages could not be ascertained, and Plaintiff could not

have known any earlier what relief he needed to seek."  (Docket No. 21 at 3).

In essence, it appear that the plaintiff is first asserting that the "continuing

wrongs" or the "continuing violation" doctrine should apply here.  This doctrine and its

impact on a statute of limitations pertain to the accrual of a claim.   Fogle v. Pierson,

2008 WL 821803, *4 (D. Colo. Mar. 26, 2008).  As correctly noted by the defendants in

their Reply, however, the Tenth Circuit has not yet specifically applied this doctrine to §

12

1983 actions.  See Frazier v. Jordan, 2007 WL 60883, *4 (10th Cir. Jan. 10, 2007), cert.

denied, 127 S. Ct. 2892 (2007); McCormick v. Farrar, 147 Fed. Appx. 716, 719-20 (10th

Cir. 2005); Burkley v. Correctional Healthcare Management of Okla., Inc., 141 Fed.

Appx. 714, 716 n.2 (10th Cir. 2005); Fogle v. Pearson, 2008 WL 821803, *4 (D. Colo.

Mar. 26, 2008); Montoya v. Board of County Com'rs, 2007 WL 779832, *6 (D. Colo.

Mar. 14, 2007).  See also Thomas v. Denny's, Inc., 111 F.3d 1506, 1513-14 (10th Cir.

1997) (doctrine does not apply to § 1981 claims).

Even assuming, for the sake of argument, that this doctrine does apply to § 1983

actions, this court notes that the Tenth Circuit's application of the doctrine in other

contexts, such as Title VII claims, "is premised on the equitable notion that the statute of

limitations should not begin to run until a reasonable person would be aware that his or

her rights have been violated."  Koch v. Daniels, 2007 WL 2029003, *9 (W.D. Okla. July

10, 2007) (quoting Martin v. Nannie & the Newborns, Inc., 3 F.3d 1410, 1415 n.6 (10th

Cir. 1993), overruled on other grounds, Davidson v. America Online, Inc., 337 F.3d

1179 (10th Cir. 1993)).  Therefore, the Tenth Circuit has held that even where this

doctrine is applicable, such a claim fails "if the plaintiff knew, or through the exercise of

reasonable diligence would have known, [he] was being discriminated against at the

time the earlier events occurred."  Id. (quoting Davidson, 337 F. 3d at 1184).  In

addition, the Supreme Court has clarified that the doctrine does not apply to discrete

acts, but only to on-going circumstances that combine to form a single violation that

cannot be said to occur on any particular day.  Kellogg v. New York State Dep't of

Correctional Servs., 2009 WL 2058560, *1 (S.D.N.Y. July 15, 2009) (citing National R.R.

Passenger Corp. v. Morgan, 536 U.S. 101, 113-15 (2002)).

13

Here, upon a review of the Prisoner Complaint, it is evident that the plaintiff would have known or had reason to know that his rights were allegedly being violated by the defendants when the specific, discrete actions detailed his Prisoner Complaint occurred.  All of such actions allegedly took place more than two years before this action was commenced.  More specifically, the court notes the following.  The last alleged action taken by defendant Milyard in Claim One was on January 20, 2006. (Docket No. 1 at 6).  For defendant Rodenbeck in Claim Two, the last alleged action taken by her was on January 5, 2004.  (Docket No. 1 at 6).  With regard to defendant Beneze in Claim Three, the last alleged action was on July 12, 2005.  (Docket No. 1 at 6).  The last alleged action taken by defendant Topliss in Claim Four was on December 6, 2004.  (Docket No. 1 at 7).  In Claim Six, with regard to defendant Foshee, the last date action was allegedly taken was on May 20, 2005.  (Docket No. 1 at 7).  Regarding defendant Maifield in Claim Seven, the last date of any alleged action was on November 29, 2004.  (Docket No. 1 at 8).  In Claim Eight, regarding defendant Bartruff, the last alleged action was on August 27, 2005.  (Docket No. 1 at 8).  Regarding defendant Fazzino in Claim Nine, the last date was November 23, 2004.  (Docket No. 1 at 8).

Plaintiff asserts in his Response (Docket No. 21 at 2) that the basis of his claim is that after the Rule 106 proceedings in state court the defendants retaliated against him by refusing to follow the court's order, denying privileges, and bringing further COPD charges, which resulted in a higher classification for the purpose of transferring him to a higher level security facility.  No such claims, however, are raised in the ten claims contained in his Prisoner Complaint.  Instead, plaintiff makes just general mention of such allegations in his "Nature of the Case" section

14

of his Prisoner Complaint.  Significantly, plaintiff did not make specific allegations

concerning such retaliation claims against any of the named defendants.  Instead,

as noted above, plaintiff merely states:

> Throughout this process, Plaintiff was wrongly denied visitation with his
> wife for approximately 3 years, causing Plaintiff and his wife to incur over
> $20,000 in fees and costs and expenses, and were subjected to retaliatory
> action, including a threatening phone call to Plaintiff's wife to drop the
> case, frivolous charges being imposed against Plaintiff, resulting in his
> reclassification and removal to a higher level security facility, and loss of
> privileges Plaintiff had worked hard to obtain.  Plaintiff had good progress
> reports, good work history, and was not viewed as a management
> problem before this charge.  Plaintiff only had one citation for running
> water at a prohibited time, in the 20 years since he has been there.  Since
> the date of this charge, he was charged with 4 violations within a 6 month
> period.

(Docket No. 1 at 5).  Thus, as the Prisoner Complaint currently stands, plaintiff has

failed to allege specific acts of retaliation by any of the named defendants that are

not time-barred, let alone a continuing course of unlawful conduct which might

constitute a pattern and practice of retaliation.

Based upon the findings above, this court concludes that the continuing violation

doctrine is not applicable under the facts alleged here.

Plaintiff also appears to argue that the limitations period was tolled while he

pursued his claim in his Rule 106 state court proceeding.  The issue of tolling is also

governed by state law.  Fratus v. DeLand, 49 F.3d 673, 675 (10th Cir. 1995).  "Once the

statute of limitations is raised as an affirmative defense, the burden shifts to the plaintiff

to show that the statute has been tolled."  Garrett v. Arrowhead Improvement Ass'n, 826

P.2d 850, 855 (Colo. 1992).  Under Colorado law, "an equitable tolling of a statute of

limitations is limited to situations in which either the defendant has wrongfully impeded

15

the plaintiff's ability to bring the claim or truly extraordinary circumstances prevented the plaintiff from filing his or her claim despite diligent efforts." <u>Dean Witter Reynolds, Inc. v. Hartman</u>, 911 P.2d 1094, 1099 (Colo. 1996).

Plaintiff argues in his Response that the extent of his damages could not be ascertained until his proceedings were made final through the state court process and that he could not have known any earlier what relief he needed to seek.  While plaintiff allegedly may not have been aware of the full extent of his injuries or damages until such time, the limitations period was not tolled.  <u>Dittman v. DJO, LLC</u>, 2009 WL 3246128 (D. Colo. Oct. 5, 2009) (citing <u>Taylor v. Goldsmith</u>, 870 P.2d 1264, 1266 (Colo. App. 1994)).  The statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of injury which is the basis of his action, <u>Kripp v. Luton</u>, 466 F.3d 1171, 1175 (10th Cir. 2006), not when he knows the full extent of his injuries or damages.  <u>Industrial Constructors Corp. v. U.S. Bureau of Reclamation</u>, 15 F.3d at 969; <u>Toney v. GMAC Mortg. Corp.</u>, 2008 WL 697367, *3 (D. Colo. Mar. 12, 2008) ("A plaintiff[] who is aware of an injury but uncertain as to the full extent of the damage sustained is not prevented from filing suit, and thus, is not entitled to a tolling of the statute of limitations.") (citing <u>Taylor v. Goldsmith</u>).

Furthermore, the court acknowledges that the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), requires prisoners bringing suit under § 1983 to exhaust available administrative remedies before seeking relief in federal court.  In addition, "[t]he majority of circuits to address the issue have concluded that the statute of limitations applicable to a § 1983 action must be tolled while a prisoner completes this mandatory administrative remedy exhaustion process."  <u>Smith v. Ortiz</u>, 2006

16

WL 620871, *4 (10th Cir. 2006) (and cases cited therein) (declining to decide the issue because the issues were untimely even with such tolling).  Even if the exhaustion requirement includes the requirement that plaintiff bring a Rule 106 proceeding, the state court action by its very nature would have concerned only a review of the plaintiff's disciplinary proceeding, not the defendants' discrete actions which are the basis of the claims raised here, with the possible exception of Claim Four against the hearing officer.  See Duncan v. McGill, 2009 WL 440938, *5 (D. Colo. Apr. 20, 2009).

In any event, even if the limitations period was tolled until the state court reversed the disciplinary ruling, plaintiff's own averment in his Prisoner Complaint concerning the date of such ruling nevertheless shows that his claims here are time-barred.  Plaintiff states that he "appealed the conviction and an Opinion was issued by the Colorado Court of Appeals in plaintiff's favor on **12/14/06**, stating that the hearing officer misapplied the law, and remanded the case for new findings applying the proper legal standard . . . ."  (Docket No. 1 at 4-5) (emphasis added). Plaintiff purportedly did not sign the Prisoner Complaint until April 7, 2009, which was well over two years after the date the state court purportedly issued its ruling reversing and remanding the disciplinary hearing decision.  Therefore, plaintiff's claims here are time-barred notwithstanding the pendency of the plaintiff's Rule 106 proceeding.

Plaintiff also has not shown that any of the defendants wrongfully impeded his ability to bring these claims or that truly extraordinary circumstances prevented him from filing his federal claims despite diligent efforts.  Therefore, this court finds

that the plaintiff has not established a basis for equitable tolling.

Based upon the findings above, this court finds that Claims One through Nine in the Prisoner Complaint are time-barred.  The court notes that Claim Five is against unserved and non-moving defendant Olathe Murphy.  It is recommended that such claim be dismissed *sua sponte* on the basis of the statute of limitations because the plaintiff has been provided notice and an opportunity to be heard on the statute of limitations issue.  See <u>Arroyo v. Starks</u>, – F.3d – , 2009 WL 4827370 (10th Cir. Dec. 16, 2009) ("[A] district court may not *sua sponte* dismiss a prisoner's § 1983 action on the basis of statute of limitations unless it is clear from the face of the complaint that there are no meritorious tolling issues, or the court has provided the plaintiff notice and an opportunity to be heard on the issue.").

In the interest of judicial economy, the court will not address the additional bases for dismissal raised in defendants' motion.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Motion to Dismiss (Docket No. 16) be granted and that the Prisoner Complaint be dismissed.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file**

18

**and serve such written, specific objections waives** *de novo* **review of the recommendation by the District Judge,** <u>Thomas v. Arn</u>**, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.** <u>Makin v. Colorado Dep't of Corrections</u>**, 183 F.3d 1205, 1210 (10**[th]** Cir. 1999);** <u>Talley v. Hesse</u>**, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date:  January 6, 2010                    <u>s/ Michael J. Watanabe</u>
      Denver, Colorado                 Michael J. Watanabe
                                  United States Magistrate Judge